IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JANET E.,

          Plaintiff,

    v.

ANDREW SAUL, Commissioner of Social Security,

          Defendant.

_____

Case No.  3:18-cv-01997-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Janet E brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), who denied plaintiffs application for Disability Insurance Benefits ("DIB").  For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Plaintiff applied for DIB on May 14, 2015.  She alleged disability beginning March 31, 2007, which was later amended to February 27, 2012.  Plaintiff's application was initially denied on September 16, 2015 and denied again on reconsideration February 22, 2016.  She requested a hearing before an

PAGE 1 – OPINION AND ORDER

Administrative Law Judge ("ALJ").  The ALJ held a hearing on June 15, 2017, where plaintiff and a vocational expert ("VE") offered testimony.  The ALJ issued an unfavorable decision on October 4, 2017.  After the Appeals Council denied review, plaintiff filed a complaint in this Court seeking review of the ALJ's decision.

## STANDARD OF REVIEW

The Social Security Act provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the ALJ's findings, district courts act in an appellate capacity not as the trier of fact.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  The district court must affirm the ALJ's decision unless it contains legal error or lacks substantial evidentiary support.  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1052 (9th Cir. 2006)).  Harmless legal errors are not grounds for reversal.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and internal quotation marks omitted).  The complete record must be evaluated and the evidence that supports and detracts from the ALJ's conclusion must be weighed.  *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).  If the evidence is subject to more than one interpretation but the Commissioner's

decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(l)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4).  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from her amended alleged onset date of February 27, 2012, through her date last insured of June 30, 2014.  Tr. 69.  At step two, the ALJ found that plaintiff had peripheral neuropathy, which qualified as a severe impairment.  Tr. 69, 20 CFR 416.1520(c).  At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity Tr. 71, 20 CFR 404.1520(d).

Before proceeding to step four, the ALJ assessed plaintiffs residual functioning capacity ("RFC"). Tr. 71-77, 20 C.F.R. § 404.1520e). The ALJ found that plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally climb and balance, and could frequently stoop, kneel, crouch, and crawl. *Id.* At step four, the ALJ found that plaintiff was capable of performing past relevant work as a legal secretary because the work did not require the performance of work-related activities precluded by the claimant's RFC. Tr. 77, 20 CFR 404.1565. As the ALJ found that plaintiff could perform past relevant work at step four, he found that plaintiff was not disabled under the Act. Tr. 78.

## DISCUSSION

Plaintiff argues the ALJ's decision involved the following errors: (1) discounting Ms. Evertz subjective testimony, (2) rejecting medical opinion evidence, (3) incorrectly assessing lay witness testimony, and (4) failing to incorporate all medical findings into the plaintiff's RFC.

I.    *Medical Opinion Evidence*

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting the medical opinions of Dr. Megan Madden, Dr. Micah Brasseur, and Dr. Michael Shrifter.

Generally, "more weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual." *Bumala v. Berryhill*, 2017 WL 1502798, at *4 (D. Or. Apr. 26, 2017) (citing *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007)). "If a treating or

examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons." *Id.*

However, "[e]ven if the opinion is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Id.* Specific, legitimate reasons may include reliance on claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities and, that the opinion is conclusory or brief or unsupported by objective medical findings. *Jacqueline, L. v. Berryhill*, 2019 WL 1922525, at *7 (D. Or. Apr. 30, 2019).

An ALJ may not reject a physician's opinion on the sole basis that it was issued after the plaintiff's last insured date. *Id.* at *9. Because evidence generated after the expiration of plaintiff's insured status may demonstrate the severity of the claimant's impairments during the relevant period, the evidence may be relevant to determining Plaintiff's functioning capacity. *Id.* (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011)); *see also Church v. Colvin*, 2013 WL 6839177, at *8 (D. Or. Dec. 27, 2013) ("The retroactive nature of Dr. Walker's opinion does not necessarily render it incredible."). However, if the lapse in time between a treating physician's opinion and last date insured undermines the credibility of an opinion that is conclusory and ambiguous in nature, an ALJ has a clear and convincing reason for rejecting the opinion. *Church v. Colvin*, 2013 WL 6839177, at *8 (D. Or. Dec. 27, 2013).

PAGE 5 – OPINION AND ORDER

A.    *Dr. Megan Madden*

Dr. Madden's assessment of plaintiff noted presumed difficulty with low-stress jobs, depression, and having more functional limitations than plaintiff's objective signs suggest.  Tr. 74-75, 1502-1507.

The ALJ does did not give Dr. Megan Madden's opinion great weight ruling that her findings (1) were not consistent with the extent of the limitations she assessed during the insured period and (2) were not supported with knowledge of claimant's specific limitations because she never performed an occupational evaluation.

Plaintiff argues that the ALJ failed to articulate clear and convincing reasons for rejecting the opinion.   Specifically, plaintiff contends Dr. Madden's observation that plaintiff suffered from decreased ankle reflexes, absent vibration sensation, and decreased temperature and pinprick sensation throughout the entire body are objective signs reflected in her 2013 neurological exam.  In addition, plaintiff notes that Dr. Madden treated the patient for three years and though she was critical of her own limitations, Dr. Madden never indicated that the opinion was not relevant to plaintiff's functioning prior to June 2014.  Thus, plaintiff asserts the ALJ's reasons for rejecting Dr. Madden's observations in her RFC were not supported by the record.

An ALJ can discredit opinions based on contradictions between the opinion and the physicians own notes that indicate much less severe symptoms.  *See Buck v. Berryhill,* 869 F.3d 1040, 1050 (9th Cir. 2017).  Here, Dr. Megan Madden's objective findings during plaintiff's insured period are generally limited to her neurological

exam and accompanying noted observations of elevated inflammatory markers, pain in plaintiff's feet, and aggravated neuropathy. These observations do not comport with the extent of plaintiff's symptoms that Dr. Madden assessed in her opinion, which states that plaintiff would have significant limitations and is incapable of low-stress jobs and standing or walking for longer than two-hour periods. Further, Dr. Madden did not evaluate plaintiff's functional limitations either before or after the insured period and repeatedly noted on the 2017 assessment that she did not perform an occupational evaluation. Accordingly, the ALJ had clear and convincing reasons for determining that Dr. Madden's opinion was not supported by objective findings during the insured period or Dr. Madden's own notes.

Thus, absent objective findings from the insured period that assess or support Dr. Madden's conclusions regarding plaintiff's functional limitations, the opinion is conclusory and unsupported by objective medical findings. *Elliott v. Astrue*, 2010 WL 3732297, at *6 (D. Or. Sept. 20, 2010) (citing *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004). Accordingly, because the opinion is conclusory and ambiguous in nature and rendered after the last date insured, the ALJ had significant and legitimate reasons for rejecting Dr. Madden's medical opinion. Accordingly, the Court cannot find that the ALJ erred in giving Dr. Madden's opinion little weight.

B.    *Dr. Michah Brasseur*

Dr. Micah Brasseur's opinion noted plaintiff's nerve conduction studies indicated that she would have substantial difficulty with stamina, pain or fatigue if

she worked full time.  Further, he noted she would need to work at a reduced pace and that her symptoms would frequently interfere with her ability concentrate and would be made worse if she worked full time.

The ALJ determined Dr. Brasseur's opinion was given little weight in assessing claimant's functioning during the relevant period because (1) Dr. Brasseur did not treat claimant until long after the last insured date; (2) Dr. Brasseur's findings were inconsistent with records produced during the time plaintiff was insured, which indicated an improving and stabled condition with medication and decreased sensation, intact strength, and normal gait; and (3) there was no indication that he reviewed claimant's earlier records.

Plaintiff argues that, despite Dr. Brasseur not examining plaintiff until after the period at issue, his opinion is nevertheless relevant because he noted there were no significant changes in Ms.  Evertz's condition.  Thus, because her objective issues are "more or less the same over time" and her comparative nerve conduction studies indicate that objective symptoms remained the same, his observations related back to the time at issue.  Moreover, plaintiff contends that Dr. Brassuer's opinion is bolstered by the fact that Dr. Madden agreed with his findings.

Similar to Dr. Madden's opinion, the ALJ reasonably determined that the extent of limitations that Dr. Brasseur stated in his opinion were inconsistent with the objective medical findings during the relevant period.  Specifically, Dr. Brasseur opines that plaintiff would experience substantial difficulty and limitations if she were employed full time and would need to change positions every two hours, despite

any objective findings during the relevant period that support such limitations. Accordingly, his assessment does not adequately reflect the demonstrated severity of the claimant's impairments during the relevant period of time. Moreover, besides acknowledging that the findings of his own EMG/nerve conduction study were consistent with the results obtained by Dr. Madden in 2013, Dr. Brasseur does not reference any objective medical findings during the relevant period in his assessment or treatment notes. Therefore, the ALJ correctly determined that Dr. Brasseur's opinion was of minimal probative value in assessing plaintiff's functioning during the relevant period.

C.    *Dr. Michael Shrifter*

Dr. Shrifter's opinion contained a completed Impairment Questionnaire. The questionnaire indicated moderate limitations in the claimant's ability to understand, remember, apply information, and concentrate. Additionally, it noted extreme limitations in claimant's ability to maintain regular attendance, complete an eight-hour day without needing an additional rest period and perform work without getting distracted. He also opined that plaintiff's depression and anxiety exacerbated and intensified her experience of pain.

The ALJ gives the opinion very little weight because (1) Dr. Shrifter did not treat claimant until two years after the date last insured and (2) his assessment of plaintiff's limitations was not supported by any explanation and not consistent with the mental status examination findings in the record.

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for providing little weight to Dr. Shrifter's opinion.  She contends that the ALJ erred in relying on findings of state agency consultants who did not agree with the treating physicians' findings.  Instead, plaintiff argues the ALJ should have requested a consultative exam because he had a duty to develop the record regarding the exact measure of Ms. Evert's mental health limitations if he had doubts regarding the nature of her psychological issues.  In support, plaintiff cites multiple instances throughout the record that support the presence of her psychological issues and asserts Dr. Shrifter's opinion refers to issues that relate back to the relevant time at issue.

"In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Williams v. Comm'r of Soc. Sec. Admin.*, 494 F. App'x 766, 768 (9th Cir. 2012) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  However, the duty is not necessarily triggered with a specific finding of ambiguity or inadequacy of the record.  *Thiems v. Colvin*, 2013 WL 3874066, at *3 (D. Or. July 25, 2013).  Where an ALJ has made specific findings that are supported by substantial evidence in the record to justify a decision to disbelieve an allegation, "our role is not to second-guess that decision." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Fair*, 885 F.2d at 603.).

The ALJ did not have a duty to further develop the record.  *See Thiems v. Colvin*, 2013 WL 3874066, at *6 (D. Or. July 25, 2013) (quoting *Mayes v. Massanari*,

276 F.3d 453, 459–60 (9th Cir.2001)) ("[T]he 'duty to develop the record [ ] is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence[,]'").  The record contained adequate findings and sufficient evidence within the relevant period to determine that plaintiff's mental health limitations were "unremarkable" Tr. 76; *compare Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) ("[T]he only effort the ALJ made to develop a full and fair record . . .  was during the first hearing . . . when he asked Widmark, 'Is there anything else you want to tell me about your health or your working capabilities that you think might be important for me to know?'").  The ALJ opinion takes considerable lengths to discuss plaintiff's history of depression and anxiety and cites specific instances where it was discussed in the record.  Ultimately, however, the ALJ determined that the effectiveness of medications and the plaintiff's documented improvement through the last date insured indicated that plaintiff's depression and anxiety did not impose more than mild functional limitations.  Further, this finding was supported by the opinions of the state agency medical consultants, who's opinion evidence was giving great weight.

The ALJ provided clear and convincing reasons for rejecting Dr. Shrifter's opinion.  The record did not support a severe impairment during the relevant period, and therefore, plaintiff was not disabled within the meaning of the Social Security Act.  *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) ("ALJ found that Sam had no severe impairments on or before his date last insured and thus was not disabled within the meaning of the Social Security Act").  Accordingly, the fact that Dr.

Shrifter did not begin treating plaintiff until two years after her last insured date renders his assessment of plaintiff's functioning of minimal probative value. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) ("After-the-fact psychiatric diagnoses are notoriously unreliable."); *Robinson v. Apfel*, 229 F.3d 1158 (9th Cir. 2000) ("[T]he attempt to diagnose a psychiatric condition five years after the fact lacks sufficient probative value to have any evidentiary weight.").

II.    *Plaintiff Subjective Symptom Testimony*

Plaintiff's subjective testimony alleged numerous symptoms: numbness and tingling in her upper and lower extremities, a feeling of frostbite in her upper extremities, shooting pain in her feet, difficulty using her hands, frequently dropping things, an uncomfortable, burning, numb, and achy sensation. She also testified she could only walk about a quarter of a mile, had issues lifting things, difficulty sitting, and experienced problems getting in and out of the shower and that the water hurt her body.

The ALJ discounted plaintiff's testimony because the statements concerning the intensity, persistence, and limiting effects of the symptoms were not consistent with the evidence in the record. Though the ALJ acknowledges the objective findings that support some functional limitations during the relevant period at issue, the ALJ maintained that the findings were not consistent with the extent of the symptoms and limitations alleged by claimant.

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony. First, plaintiff asserts that the ALJ cherry-picked

evidence that demonstrated a narrative that plaintiff was doing well and ignored evidence from the record that did not "paint a rosy picture of Ms. Evertz's neuropathy." Pl.'s Br. 15. As a result, plaintiff contends that the ALJ cited sections of the record that fail to demonstrate the broader development during the time at issue and instead, only cited evidence that indicated she could engage in sustaining regular work activity.

An ALJ must perform a two-stage analysis when deciding whether to accept plaintiff's subjective symptom testimony. *Bumala v. Berryhill*, 2017 WL 1502798, at *6 (D. Or. Apr. 26, 2017). First, "the claimant must produce objective medical evidence of an impairment which could reasonably be expected to produce some degree of symptoms." *Id.* Second, the ALJ assesses the credibility of plaintiff's testimony regarding the symptom's severity by identifying specific evidence that undermines the testimony. *Id.* Specific evidence that undermines the alleged severity of plaintiff's testimony may include the effectiveness of medication in treating plaintiff's symptom severity. *Id.*

To support and adverse credibility determination at this stage, the ALJ must rely on substantial evidence rather than general findings. *Id.* "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1214 (D. Or. 2019) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)).

Here, the ALJ rejects lay testimony because "the objective findings that support some functional limitations . . . is not consistent with the extent of the symptoms and limitations alleged by claimant." Tr. 72. Throughout the relevant period, the record repeatedly documents that plaintiff experienced pain, but it also indicates that her pain was well-managed, and her examinations lacked support for the alleged debilitating limitations. The ALJ spent considerable time weighing the sparse objective examination findings and reported pain against medication effectiveness, plaintiff's activity, and reported improvement. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Green v. Berryhill*, 2017 WL 2369378, at *4 (D. Or. May 30, 2017) ("ALJ reasonably found that the objective medical records show that plaintiff is able to manage pain with a combination of prescribed medications or conservative medical treatment.").

Accordingly, the ALJ identified specific evidence when assessing the credibility of plaintiff's testimony regarding the intensity, persistence, and limiting effects of her disability and had a sufficiently specific basis for rejecting plaintiff's testimony. Thus, the Court rejects the argument that the ALJ was "cherry-picking" the record to find specific evidence to support his conclusion. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014) ("[T]his allegation is seldom successful because crediting it would require a court to re-weigh record evidence.").

Plaintiff takes issue with the ALJ citing plaintiff's ability to go hiking on one occasion. However, the ALJ's assessment of plaintiff's condition does not indicate

that plaintiff's outing was determinative in weighing the credibility of plaintiff's opinion. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[T]he ALJ must give 'specific, clear and convincing reasons' in order to reject the claimant's testimony about the severity of the symptoms."). Rather, the ALJ identified plaintiff's canoeing and hiking trip among a multitude of other events in the record that cast doubt on the extent of plaintiff's alleged symptoms.

III.    *Lay Witness Testimony*

Plaintiff argues that the ALJ erred in not crediting the lay witness testimony of her husband, daughter, and sister. An ALJ must accept plaintiff's testimony about her symptoms as competent evidence unless the ALJ gives reasons for the rejection that are germane to each witness. *Bumala v. Berryhill*, 2017 WL 1502798, at *7 (D. Or. Apr. 26, 2017) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Discounting lay witness testimony on the basis of its conflicting with medical evidence is legitimate; however, a lack of support from the "overall medical evidence" is also not a proper basis for disregarding a lay witness' observations. *Diedrich v. Berryhill*, 874 F.3d 634, 640–41 (9th Cir. 2017). "Once a claimant submits objective medical evidence establishing an impairment that could reasonably be expected to cause some pain, 'it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings.'" *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) (per curiam).

Further, although observations were completed after the last date insured, the observations may nevertheless be relevant to show a plaintiff's symptoms during that period. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Unless there is a reason to believe that the plaintiff experienced a major symptom change between the observations and period insured, it is a fair and reasonable inference that the observed symptoms were substantially similar to the symptoms claimant experienced during the relevant period. *Id.* Indeed, lay testimony typically functions to offer a different perspective than what medical records alone can provide. *Id.*

An ALJ may disregard lay witness statements if they are inconsistent with the claimant's activities of daily living or the other evidence of record." *Pofahl v. Colvin*, 2015 WL 1401622, at *4 (D. Or. Mar. 24, 2015) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)). However, before determining that plaintiff's activities suggest that a plaintiff is not actually disabled, the ALJ must explain how the skills are transferrable to the world environment. *Dubrawsky v. Berryhill*, 2017 WL 1758054, at *7 (D. Or. May 2, 2017).

A.    *Theodore E's Lay Testimony*

Plaintiff's husband, Theodore E., testified on his observations of plaintiff's symptoms in July 2015 and June 2017. In the July 2015 function report, he stated that plaintiff suffered chronic fatigue, depression, chronic pain in her hands and feet, difficulty concentrating and completing tasks, irritability, and difficulty walking. He also noted that plaintiff had a reduced desire to groom, did not do household chores, and was limited to lifting five pounds, standing for three to five minutes, walking

PAGE 16 – OPINION AND ORDER

twenty-five yards, and could not squat or kneel.   **Tr. 76.**  In June 2017, Mr. E.
submitted testimony that specifically addressed his observations of plaintiff's
symptoms during the relevant period by referencing the year plaintiff's symptoms
were exacerbated.  He stated that plaintiff began experiencing increasing orientation
in 2010, slurred speech in 2008, and since then, her pain, fatigue, and irritability
have worsened.

The ALJ gave Mr. E.'s testimony little weight because (1) it was completed
after the date last insured, (2) was not consistent with the medical records pertaining
to the relevant period, (3) and conflicted with plaintiff's hiking and canoeing outing
in 2012.

The fact Mr. E. completed his statements after the last date insured is an
illegitimate reason for rejecting his testimony.   Many of Mr. E's observations
specifically related back to the insured period and are therefore relevant to the
assessment of plaintiff's symptoms. *Diedrich v. Berryhill*, 874 F.3d 634, 640–41 (9th
Cir.   2017)   ("[A]lthough   Niebaum's   observations   began   three   months
after Diedrich's insured period ended, his observations are still relevant to
show Diedrich's symptoms during that period.").

Plaintiff argues that Mr. E.'s testimony is supported by the record and relates
back to the period at issue.  Specifically, plaintiff cites several notes in the record that
support the symptoms that Mr. E. included in his testimony and provides that those
symptoms prompted treating providers to perform an MRI to look for a brain tumor.

Further, plaintiff cites that eight small nonspecific focal hyperintensities were found consistent with post inflammatory or post ischemic gliotic changes.

Mr. E.'s testimony is not inconsistent with substantial evidence on the record. Though his observations were not entirely supported by the medical record, no affirmative contradictory evidence conflicted with his testimony. *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1218 (D. Or. 2019) (quoting *Rivera v. Colvin*, 2013 WL 6002445, at *4 (D. Or. Nov. 12, 2013)) ("[T]he ALJ can 'reject [lay witness] reports . . . based only on affirmative contradictory evidence in the medical record, not absence of supporting evidence.'").  Mr. E. attributed many of plaintiff's functional limitations to the extent of pain she experienced, which is repeatedly cited in the medical record.  He also discusses symptoms arising from plaintiff's depression, irritability, and difficulty concentrating and completing tasks, which is also repeatedly cited throughout the record.  Thus, despite the lack of objective medical evidence supporting the extent of plaintiff's functional limitations, his testimony does not conflict with the record.  Accordingly, the ALJ's stated reason for rejecting Mr. Evertz's opinion was erroneous and lacked a legally sufficient basis for discounting lay witness testimony. *Cindy F. v. Berryhill*, 367 F.  Supp. 3d 1195, 1219 (D. Or. 2019) ("Lack of support or corroboration by the medical record is not a legally sufficient basis for discounting lay witness testimony, and the ALJ did not identify any inconsistencies in the medical record as a basis for rejecting the lay witness testimony."); *see, e.g., Lacie R. v. Berryhill*, 2019 WL 1919168, at *11 (D. Or. Apr. 30, 2019) ("[T]he ALJ relied on a lack of medical diagnosis for Plaintiff's neuropathy as a

reason to dismiss Lorianna R.'s lay witness testimony. The Court finds that this reason does not qualify as germane.").

Additionally, the ALJ erred in failing to explain how plaintiff's canoeing and hiking outing was inconsistent with the pain Mr. E. described in his testimony. On this outing, it appears plaintiff and her husband drove to the side of a road to hike down the embankment to the river. Though Mr. E. is able to "hoist" the canoe himself, it seems plaintiff assisted him with putting the canoe in the water. However, the ALJ's opinion failed explain how this one-time, physically undemanding outing constituted an activity that was transferrable to a work setting. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("Yet if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain."); *Denell S. v. Comm'r, Soc. Sec. Admin.*, 2019 WL 6716984, at *8 (D. Or. Dec. 6, 2019) ("ALJ did not explain his finding that plaintiff's ability to help with housework "when able," check the mail, and grocery shop a few times a month showed that she has few limitations."). Thus, the Court finds no inconsistency supported by substantial evidence that the canoeing and hiking outing was inconsistent with the pain Mr. Evertz described in his testimony.

"This error is harmless, however, because the ALJ properly discounted [p]laintiff's testimony regarding her limitations caused by her physical impairments." *Lacie R. v. Berryhill*, 2019 WL 1919168, at *12 (D. Or. Apr. 30, 2019); *Lord v.*

*Berryhill*, 2018 WL 1811472, at *6–7 (D. Or. Apr. 16, 2018) (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011) ("[A]n ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'").

Both plaintiff and her husband's testimony are similar regarding the alleged symptoms and degree of pain. Given that the ALJ has validly rejected plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms, her husband's testimony would not alter the ALJ's disability decision and is therefore harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1116 (9th Cir. 2012).

B.    *Beatrice P. & Barbara M.  Lay Witness Testimony*

Plaintiff's daughter, Beatrice P., testified that plaintiff was unable to walk too far or too long, needed a cane to help her walk to avoid falling when her feet went numb.  Plaintiff's sister, Barbara M., testified that claimant was unable to enjoy spending time with her grandchildren due to her limited mobility and severe pain and had been showing alarming signs of decline in 2002 or 2003.

The ALJ gives these statements little weight because (1) there were rendered after the date last insured, (2) are of minimal probative value in assessing the claimant's functioning during the relevant time at issue, and (3) is not consistent with the medical records, which reflected improvement and stability in the claimant's condition.  Specifically, the ALJ takes issue with Ms. M's statement because plaintiff continued to work after 2002, which runs counter to her assertion that she began showing "alarming signs of decline" during that period.  Tr. 77.

PAGE 20 – OPINION AND ORDER

Plaintiff argues that the fact the testimony was written after the date last insured was immaterial because her family knew her during the relevant date at issue, and therefore their account is probative.  Further, plaintiff asserts that that the statements provide credible day-to-day observations and the record supports those statements.  Accordingly, plaintiff contends that ignoring the accounts is harmful legal error because a reasonable ALJ could have found plaintiff disabled if lay witness accounts were fully credited.

The ALJ did not need to reject any of the evidence in Ms. P. and Ms.  M.'s testimony to reach his conclusions and therefore did not err.  *Lord v. Berryhill*, 2018 WL 1811472, at *6–7 (D. Or. Apr. 16, 2018).  In determining that the testimony was of minimal probative value in assessing the claimant's functioning during the relevant period, the ALJ observed that Ms. P.'s statements regarding plaintiff's inability "to walk too far or too long, and needed a cane to help her walk as not to fall when her feet were numb." Tr. 77.  Similarly, the ALJ cites Ms.  M's statements regarding plaintiff's alarming signs of decline in 2002 or 2003 and progressive numbness and pain.  Though both testimonies reiterate that plaintiff suffers from extensive pain, they do not provide any specifics regarding plaintiff's functional limitations or how her impairment affects her ability to work, such as how far she could walk, the extent she could move, or how long she could concentrate.  Accordingly, the ALJ did not err in determining that the testimony was of minimal probative value in assessing the claimant's functioning during the relevant period.

Moreover, the witnesses' testimony both describe plaintiff's condition progressively worsening over a large span of time without specifics regarding what functional limitations impeded plaintiff's ability to work during the relevant period. For example, Ms. P. discusses how plaintiff's symptoms progressively worsened from 2005 to 2017, the date of the testimony, and Ms. M. discusses the progression from 2002 to 2017, the date of the testimony. Thus, both testimonies give reason to believe that the plaintiff experienced a major symptoms change, but it is unclear whether the extent of these limitations functionally limited plaintiff during the relevant period because there were no specifics on what functional limitations plaintiff suffered and whether they occurred during the relevant period. *Fair v. Bowen*, 885 F.2d 597, 601–02 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) (per curiam). Accordingly, it is unclear whether the observations specifically related back to the insured period and were therefore provided minimal probative value by the ALJ. Thus, the ALJ gave germane reasons for not fully crediting this testimony.

IV.    *Residual Functioning Capacity Finding*

The ALJ did not err in assessing plaintiff's residual functional capacity ("RFC"). Plaintiff contends that the assessed RFC is incomplete because it does not specifically recognize plaintiff's ability to perform sustained work, ignored the reduced concentration and all-over body pain that occurs with fibromyalgia that was diagnosed in the record, and failed to consider all of the evidence. This argument fails, however, because the ALJ did not err in his treatment of the disputed medical experts or other sources when reaching his determination that plaintiff was able to

PAGE 22 – OPINION AND ORDER

perform her past relevant work.  *See Delegans v. Berryhill*, 766 F. App'x 477, 480 (9th Cir. 2019).

Moreover, the ALJ discusses that "the record is devoid of the required clinical findings to establish the fibromyalgia diagnosis as a medically determinable severe impairment because it was not accompanied by the required clinical findings."  Tr. 69-70.  Despite this lack of required clinical findings, the ALJ discusses the pain plaintiff experienced throughout the relevant period as well as the effectiveness of medications in reaching his ultimate determination that claimant had the RFC to perform light work as defined in 20 CFR 404.1567(b).  Thus, the substantial evidence from the record supports the ALJ's residual functional capacity funding.

## CONCLUSION

The Commissioner's decision is AFFIRMED, and this case is dismissed.

IT IS SO ORDERED.

Dated this  30th  day of May 2020.


_____
/s/Ann Aiken
Ann Aiken
U.S. District Judge